Oralia ACOSTA, et al.

v.

AMOCO OIL COMPANY.

Civil Action No. G–97–461.

United States District Court,
S.D. Texas,
Galveston Division.

Oct. 3, 1997.

Francisco Javier Rodriguez, McAllen, TX, Esequiel Tovar, Rodriguez Pruneda Toval Enriquez and Calvillo, McAllen, TX, for Oralia Acosta, Artemio Aguilera, Maria Aguilera.

Francisco Javier Rodriguez, McAllen, TX, for Connie Aldridge, Marlo Aldridge, Rosa Maria Alvarez, Daniel Garcia Arellano, Billie Bell, Ambrioso Briones, Pedro J. Briones, Sylvia Briones, Elizabeth Briones, Esperanza Briones, Brenda Briones, Maria Luisa Briones, Rosaura Cabrera, Jose Angel Cabrera, Sr., Hilberto Castrejon, Kristy Crawford, Jose Luis Cruses, Martha Darden, Monica Darden, Phillip Darden, Everett Darden, Alicia De La Paz, Armando Espericueta, Andres Espericueta, David Espinoza, Norma Espinoza, Joel Espinoza, Luis Espinoza, Laura Espinoza, Julia Espinoza, Maria Espinoza, Paulo Fernandez, Leopoldo Fernandez, Maria Fernandez, Jose Santos Flores, Jesse Flores, Mary S. Flores, Maria Galaviz, Dionico Garcia, Leopoldo Garcia, Kwacecia Glen, Angelica Gongora, Guadencio Gonzalez, Perfecto Gonzalez, Fidel Gonzalez, Antonio Gonzalez, Consuelo Gonzalez, Mary Griffin.

James B. Galbraith, McLeod Alexander Powel & Apffel, Galveston, TX, for Amoco Oil Co.

### ORDER DENYING PLAINTIFFS' MOTION TO REMAND

KENT, District Judge.

Plaintiffs filed this negligence action in Galveston County state court on July 16, 1997. Defendant Amoco Oil Refinery timely removed the case to this Court on August 8, 1997. Now before the Court is Plaintiffs' Motion to Remand of September 2, 1997. For the reasons set forth below, Plaintiffs' Motion to Remand is, for now, **DENIED**.

Plaintiffs were allegedly exposed to toxic gases after a chemical fire at Defendant's oil refinery produced smoke and gas in Texas City, Texas on July 24, 1995. Plaintiffs sued in Galveston County state court and Defendant removed the case to this Court based upon 28 U.S.C. § 1332. Plaintiffs now contend that this Court lacks subject matter jurisdiction. Plaintiffs concede that complete diversity exists in this case; Plaintiffs are from Texas, and Defendant is a Maryland corporation with its principal place of business in Illinois. However, according to Plaintiffs' Motion to Remand, to which Defendant did not timely respond,[1] Plaintiffs "anticipate" that their claims will not exceed $75,000.[2] Although typical of Plaintiffs' Motion, the Court finds this vagueness irksome and unsatisfactory. Notwithstanding its inchoate nature, this Court is inclined to grant Plaintiffs' Motion. However, given the nature of the claims asserted, "anticipate" is simply not sufficient. Due to the paucity of Plaintiffs' Complaint and Motion to Remand, the Court has no idea whether Plaintiffs' claims will exceed the $75,000 needed to invoke the jurisdiction of this Court. According to Plaintiffs' pleadings, this case resulted after a fire occurred at Defendant's oil refinery. After the fire, various chemicals were emitted, allegedly creating a "chemical cloud" which accumulated on Plaintiffs' property. Plaintiffs have alleged multiple injuries, including bronchial irritations, headaches, dizziness, eye irritations, emotional trauma, and property damage. Over two hundred Plaintiffs seek remedy in this case.[3] It is entirely

---

1. Plaintiff filed its Motion for Remand on September 2, 1997. Defendant responded on September 25, 1997. Rule 6.D of the Local Rules of the Southern District of Texas require responses to be filed within 20 days. When a party fails to respond to a motion in a timely fashion, the Local Rules direct this Court to treat the motion as unopposed. See S.D.Tex.R. 6.E ("Failure to respond [to a motion] will be taken as a representation of no opposition."). Defense counsel is cautioned for his and his clients' benefit to become familiar with and comply with the Local Rules in the future.

2. The Court notes that in Defendant's Notice of Removal, Defendant incorrectly alleges that this Court has jurisdiction because the amount in controversy in this case exceeds $50,000. Defendant's counsel is advised that Congress has

amended 28 U.S.C. § 1332. Indeed, this statute was amended almost a year ago and has been in effect since January 17, 1997. See Act of Oct. 19, 1996, Pub.L. No. 104–317, § 205(a), 110 Stat. 3850. To invoke a Federal Court's diversity jurisdiction, the amount in controversy must exceed *$75,000*. The Court finds this ignorance of basic jurisdictional requirements unacceptable and will examine closely and with a critical eye documents filed in the future by defense counsel.

3. When determining the amount in controversy for jurisdictional purposes, the Court does not aggregate Plaintiffs' claims, but instead, considers each claim separately. See Snyder v. Harris, 394 U.S. 332, 336, 89 S.Ct. 1053, 1057, 22 L.Ed.2d 319 (1969) (stating that multiple plaintiffs are not allowed to add together "separately

conceivable that not one of the Plaintiffs will recover more than $75,000; however, the Court cannot say with any certainty that each of Plaintiffs' claims will or will not exceed that amount. Indeed, it entirely possible, if not likely, that at least one of the Plaintiffs in this case will recover more than $75,000.[4] A court can determine whether removal is proper if it is facially apparent that the claims are likely above $75,000. *See Allen,* 63 F.3d at 1335; *De Aguilar,* 11 F.3d at 57.[5] Without a clearer statement by Plaintiffs, the Court assumes from the facts alleged in Defendant's Response and the scant amorphisms alleged on the face of Plaintiffs' Complaint that the jurisdictional amount will exceed the jurisdictional requirements of the Court.[6] Thus, Plaintiffs' Motion to Remand must be denied.

The Court finds another basis upon which to deny Plaintiffs' Motion. In their Complaint, Plaintiffs have alleged gross negligence in order to recover punitive damages. The Court notes, without weighing the merits of Plaintiffs' claims, that the standard and quantum of proof required to recover punitive damages under Texas law is quite stringent. *See, e.g., Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 21, 31 (Tex.1994) (defining "gross negligence" as requiring the existence of an extreme risk and subjective awareness by the defendant as he proceeds with conscious indifference in the face of that risk); Tex.Civ.Prac & Rem.Code § 41.003

(Vernon 1997) (providing that "exemplary damages may be awarded only if the claimant proves [such claim] by clear and convincing evidence....."). Assuming arguendo that Plaintiffs' punitive damages claims will actually survive dispositive motions and make it to trial, the Court finds persuasive Defendant's arguments that punitive damage claims should be aggregated when determining the amount in controversy. It is well-established that aggregation of damages allegedly owed to separate plaintiffs is permitted where "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Snyder,* 394 U.S. at 335, 89 S.Ct. at 1056; *Troy Bank v. G.A. Whitehead & Co.,* 222 U.S. 39, 39, 32 S.Ct. 9, 9, 56 L.Ed. 81 (1911); *see generally* 1 James W. Moore, Moore's Federal Practice § 97(3), at 917 (2d ed.1995) ("Basically, aggregation is allowed when the plaintiffs unite to assert a 'common,' "joint," integrated' or 'undivided right.' "). Thus, the question in this case becomes whether Plaintiffs' punitive damage claims are indeed such a single right in which they have a common, undivided interest.

In *Allen v. R. & H. Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir.1995), the Fifth Circuit held that Mississippi law required a District Court to aggregate a group of plaintiffs' punitive damage claims when determining whether diversity jurisdiction was proper because a claim for punitive damages was a

and distinct demands, unite[d] for convenience and economy in a single suit"); *Zahn v. International Paper Co.,* 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973) ("[O]ne plaintiff may not ride in on another's coattails.").

4. When a District Court properly has original jurisdiction over a matter, 28 U.S.C. § 1367(a) allows the court *in its discretion* to exercise supplemental jurisdiction over related state law claims involved in the case arising from common facts. *See Noble v. White,* 996 F.2d 797, 799 (5th Cir.1993) ("District Courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over state claims once all federal claims are dismissed."). Thus, if one of the Plaintiff's claims exceeds $75,000 the Court could properly exercise jurisdiction over all other claims.

5. When the plaintiff alleges a sum certain in his complaint, that amount generally controls if

made in good faith. *See St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). Of course, because Texas state civil procedure disallows damage claims for specific amounts, District Courts frequently face the situation confronted here where a plaintiff seeks remand after not having plead a specific amount. *See* Tex.R.Civ.P. 47 (requiring "in all claims for unliquidated damages only the statement that the damages sought are within the jurisdictional limits of the court....").

6. The Court notes that the burden here rests with the Defendant. "When the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds [$75,000]." *De Aguilar v. Boeing Co.,* 11 F.3d 55, 58 (5th Cir.1993). Without a clearer statement or explanation by Plaintiffs, Defendant has met its burden.

single right being enforced by multiple plaintiffs. In reaching this holding, the Fifth Circuit found that punitive damages by nature in Mississippi were "fundamentally collective," were not compensatory, and were intended primarily to punish. *See id.* The Fifth Circuit observed that, in Mississippi at least, the focus of punitive damages is not on one particular plaintiff; instead, the award is tailored to the defendant's wealth and wrongdoing, and the benefits of the award are meant to accrue to society. *See id.* Moreover, in Mississippi, a plaintiff does not have a claim of right to punitive damages; " 'it is always within the discretion of the jury or trial judge to withhold them.' " *See id.* at 1333 (quoting W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 2, at 14 (5th ed.1984)). Thus, the Circuit counted the collective punitive award sought against each plaintiff's required jurisdictional amount. *See id.*

■ Although the Fifth Circuit has not addressed this issue under Texas law, this Court finds persuasive the reasoning in *Allen* as it applies to punitive damages under Texas law. The purpose of punitive damages in Texas is identical to their purpose in Mississippi. In Texas, punitive damages are meant to punish, not to compensate. *See Estate of Moore v. Commissioner,* 53 F.3d 712, 715 (5th Cir.1995); *Moriel,* 879 S.W.2d at 17 ("Punitive (or exemplary) damages are levied against a defendant to punish the defendant for outrageous, malicious, or otherwise morally culpable conduct."); *see also City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 266–67, 101 S.Ct. 2748, 2759, 69 L.Ed.2d 616 (1981) ("Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action is intentional or malicious, and to deter him and others from similar conduct."); *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 19, 111 S.Ct. 1032, 1044, 113 L.Ed.2d 1 (1991) (finding that in most states "punitive damages are imposed for purposes of retribution and deterrence"). Moreover, Texas plaintiffs have no claim of right to punitive damages. *See* TEX.CIV.PRAC. & REM. CODE § 41.010 (Vernon 1997) ("The determination of whether to award exemplary damages and the amount of exemplary damages

to be awarded is within the discretion of the trier of fact."); *Moriel,* 879 S.W.2d at 17 n. 7 (" 'It is generally agreed that punitive damages are a windfall to the plaintiff and not a matter of right....' " (quoting PROSSER & KEETON § 2, at 14)).

■ Furthermore, Texas, like Mississippi, tailors punitive damages to the particular defendant's wealth and wrongdoing. *See* TEX.CIV.PRAC. & REM.CODE § 41.011 (providing that the trier of fact should consider the "nature of the wrong," "character of the conduct involved," "degree of culpability of the wrongdoer," "extent to which such conduct offends a public sense of justice and propriety' " and the "net worth of the defendant" when determining whether to award punitive damages); *Lunsford v. Morris,* 746 S.W.2d 471, 472–73 (Tex.1988). The Court holds today that a Texas District Court must consider plaintiffs' punitive damage claims in the aggregate when determining the amount in controversy. At least two other District Courts within this Circuit have reached this same decision. *See Corley v. Southwestern Bell Telephone Co.,* 924 F.Supp. 782, 786 (E.D.Tex.1996) (Folsom, J.) ("[A]ccording to precedent in this circuit and district, if the punitive damages are a single collective right in which the class has a common and undivided interest, the damages can be considered in the aggregate for purposes of meeting the requisite amount in controversy."); *In re Norplant Contraceptive Products Liability Litigation,* 907 F.Supp. 244, 246 (E.D.Tex. 1995) (Schell, C.J.) ("Therefore, Judge Fitzwater was correct in holding that the full amount of punitive damages may be aggregated in Texas in determining the amount in controversy.") Other District Courts outside of Texas but within this Circuit have found likewise. *See, e.g., Duhon v. Conoco, Inc.,* 937 F.Supp. 1216 (W.D.La.1996); *Brooks v. Georgia Gulf Corp.,* 924 F.Supp. 739 (M.D.La.1996); *Chadwick v. Shell Oil Co.,* 828 F.Supp. 26, 28 (E.D.La.1993); *Lailhengue v. Mobil Oil Co.,* 775 F.Supp. 908, 910–14 (E.D.La.1991); *but see Addison v. Illinois Central R.R.,* 967 F.Supp. 173 (E.D.La.1997).

In reaching this holding, the Court understands that, when considering punitive damages, the trier of fact considers the nature and extent of harm to the individual plaintiff. *See* TEX.CIV.PRAC. & REM.CODE § 41.011 (providing that the trier of fact should consider the "situation and sensibilities of the parties concerned" when determining whether to award punitive damages); *Allen,* 63 F.3d at 1333 n. 12; *see also BMW of North America, Inc. v. Gore,* 517 U.S. 559, ——, 116 S.Ct. 1589, 1601, 134 L.Ed.2d 809 (1996) (noting the importance of the ratio of an award of punitive damages to the actual harm inflicted on the plaintiff when determining whether an award is unreasonable or excessive); RESTATEMENT (SECOND) OF TORTS § 908(2). However, when considering the individual plaintiff's harm, the trier of fact does so with a sense of public justice and propriety, emphasizing the deterrent purpose of these damages. *See* TEX.CIV.PRAC. & REM.CODE § 41.011 (Vernon 1997). Furthermore, although recovered by individual plaintiffs, punitive damages arise from the same legal source—that is, a Texas defendant's fraud, malice, wilful act or omission, or gross neglect in wrongful death actions. *See* TEX.CIV. PRAC. & REM.CODE § 41.003 (Vernon 1997). The Court is also cognizant that previous punitive awards imposed on a defendant do not limit recovery by subsequent plaintiffs pursuing causes of action arising out of the same facts and circumstances. *See Allen,* 63 F.3d at 1334 n. 11. Despite arguments to the contrary, the Court holds that, when a group of plaintiffs brings a claim alleging punitive damages, a District Court in Texas must aggregate the punitive damage claims to determine whether the amount in controversy exceeds $75,000.[7] Assuming complete diversity exists, if in the aggregate plaintiffs' punitive damage claims will likely exceed $75,000, the District Court may properly exercise subject matter jurisdiction.

■ In this case, the Plaintiffs' exemplary damage claims are collective in nature. All of their claims arise out of the same facts and circumstances. Although their compensatory damages may differ depending upon the injuries each suffered, each of Plaintiffs' claims is based on the same alleged negligent act by the Defendant. The Plaintiffs here have united "to enforce a single title or right in which they have a common and undivided interest," and seek to punish and deter this and other defendants from such actions in the future. *Snyder,* 394 U.S. at 335, 89 S.Ct. at 1056. Given that 204 Plaintiffs are parties in this case, the Court finds that in the aggregate their punitive damage claims, if successful, will more likely than not exceed $75,000, therefore invoking the jurisdiction of this Court.[8]

As this case progresses the Court has a continuing obligation to examine its jurisdiction to ensure subject matter jurisdiction exists. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." (emphasis added)). If at any time prior to trial, the Court finds that Plaintiffs' individual claims will not likely exceed $75,000, and also determines that Plaintiffs no longer seek punitive damages, Plaintiffs' punitive damage claims are untenable, or that Plaintiffs' punitive damage claims will not exceed $75,000 in the aggregate, the Court may exercise its authority under 28 U.S.C. § 1447(c) and remand this case. Moreover, assuming a submission for *all* 204 claims, Plaintiffs are given leave to submit to this Court an affidavit in support of their Remand Motion *from each* which states clearly and succinctly that their individual claims will not exceed $75,000, exclusive of interest and costs.[9] Plaintiffs, if

---

7. The Fifth Court stated in *Allen:*
   Punitive damages are, to use the language of the caselaw, *undivided* claims of right with a potentially *separable* award. Here, each of the 512 plaintiffs was empowered to bring a claim for punitive damages separately. The fact that they choose not to pursue their claims individually does not limit each plaintiff's alleged entitlement to the award; it only affects its distribution. The limiting factor here was the plaintiffs' decision to file jointly.

*Allen,* 63 F.3d at 1334.

8. 75,000 ÷ 204 = $367.64

9. A District Court can require parties to set forth the facts in controversy by affidavit or in the removal petition that supports a finding of the requisite amount in controversy. *See Allen,* 63 F.3d at 1335.

still seeking remand, must submit such affidavits within **thirty (30) days** of the date of this Order. Plaintiffs are advised that if remand is granted, this Court will retain plenary jurisdiction in perpetuity over each and every one of their claims to ensure NO INDIVIDUAL CLAIMANT varies from his affidavit, subject to sanction. In that event, and if this Court receives said affidavits, the Motion to Remand will be reconsidered and granted.

For the reasons set forth above, Plaintiffs' Motion to Remand, for now, is **DENIED.**

**IT IS SO ORDERED.**